UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

LILING GUAN, *individually and on behalf of all other employees similarly situated,*

                            Plaintiff,

                      -v.-

LASH PRINCESS 56 INC. *d/b/a* LASH PRINCESS 56 *d/b/a* LASH PRINCESS; OSCAR LIN; and QINYU LIU a/k/a ULA LIU,

                            Defendants.

22 Civ. 2552 (KPF)

**OPINION AND ORDER**

---

KATHERINE POLK FAILLA, District Judge:

Plaintiff Liling Guan ("Plaintiff") claims to have been employed as a lash technician by Defendants Lash Princess 56 Inc. ("Lash Princess"), Oscar Lin ("Lin"), and Qinyu Liu ("Liu," and together with Lin, the "Individual Defendants," and together with Lin and Lash Princess, "Defendants") for a period of nearly five months.  During this period, Plaintiff contends that Defendants committed numerous violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201-219, and the New York Labor Law (the "NYLL"), N.Y. Lab. Law.  Plaintiff further contends that following her employment with Defendants, the Individual Defendants shuttered Lash Princess to avoid liability and then opened a new corporate entity engaged in the same work. Now before the Court are Defendants' motion to dismiss Plaintiff's First Amended Complaint (or "FAC") and Plaintiff's cross-motion to amend the FAC. For the reasons stated in the remainder of this Opinion, the Court denies Defendants' motion and grants Plaintiff's cross-motion.

**BACKGROUND**[1]

**A.    Factual Background**

**1.    Plaintiff's Employment with Defendants**

Lash Princess is a New York corporation "engaged in the lash extension business" at its two locations in Manhattan and Flushing, Queens, New York. (FAC ¶ 10). Plaintiff avers that Lash Princess has between four and seven employees, and that it "is a business engaged in interstate commerce that has gross sales in excess of [f]ive [h]undred [t]housand [d]ollars … per year." (*Id.* ¶¶ 11-12). Further, Plaintiff alleges that Lash Princess "purchased and handled goods moved in interstate commerce," and that it is an "enterprise engaged in commerce[.]" (*Id.* ¶¶ 13-14). Both Lin and Liu were founders, officers, and/or owners of Lash Princess. (*Id.* ¶¶ 15-16). Lin determined Lash

---

[1]     This Opinion draws its facts primarily from the First Amended Complaint (Dkt. #21 (the "FAC")), the well-pleaded allegations of which are taken as true of the purposes of this Opinion. The Court sources additional facts and materials from certain documents submitted by the parties in connection with Defendants' motion to dismiss and Plaintiff's cross-motion to amend. In particular, the Court considers Exhibit I to the Declaration of Ziyi Gao in support of Plaintiff's cross-motion for leave to file an amended complaint and in opposition to Defendants' motion to dismiss, which exhibit is the proposed Second Amended Complaint (Dkt. #29-9 (the "SAC")).

For ease of reference, the Court refers to Defendants' memorandum of law in support of their motion to dismiss as "Def. Br." (Dkt. #26), to Plaintiff's memorandum of law in opposition to Defendant's motion to dismiss and in support of Plaintiff's cross-motion to amend as "Pl. Opp." (Dkt. #28), to Defendants' reply in support of their motion to dismiss and opposition to Plaintiff's cross-motion to amend as "Def. Reply" (Dkt. #32), and to Plaintiff's reply in support of her cross-motion to amend as "Pl. Reply" (Dkt. #36).

Plaintiff requests that the Court disregard Defendants' reply submission and grant her cross-motion as unopposed because Defendants failed to format their brief properly. (Pl. Reply 2-3). To be sure, Defendants' combined reply and opposition is styled as the "Declaration of Yimin Chen," rather than as a memorandum of law. Plaintiff is correct that this submission is violative of Local Civil Rule 7.1(b). That being said, "[a] district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." *Holtz* v. *Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir. 2001). Because the Court does not believe that Plaintiff has been prejudiced by Defendants' improper submission, the Court will nonetheless consider it.

Princess's employees' wages, maintained the relevant employment records, and had the ability to fire and hire employees. (*Id.* ¶ 19). Liu similarly had the ability to fire and hire employees, and in fact initially recruited and hired Plaintiff. (*Id.* ¶ 20). Both Lin and Liu "participated in day-to-day management of Lash Princess in both Manhattan and Flushing[,]" and would occasionally ask employees at one location to staff the other. (*Id.* ¶ 21).

Plaintiff was employed by Defendants as a lash technician at Lash Princess's Manhattan location from April 29, 2021, to September 10, 2021. (FAC ¶ 8). In this role, Plaintiff provided lash extensions to customers. (*Id.* ¶ 36). On two separate occasions — once in early May 2021, and once on August 26, 2021 — Plaintiff worked for Defendants at Lash Princess's Flushing location. (*Id.* ¶ 9). Plaintiff claims that at all times she was employed by Defendants, she was a non-exempt employee under the relevant federal and state laws. (*Id.* ¶ 35).

## 2. Defendants' Employment Practices

From April 29, 2021, to May 31, 2021, Plaintiff worked five days a week for Defendants, either Wednesday through Sunday, or Thursday through Monday. (FAC ¶ 37). Plaintiff typically worked from 10:30 a.m. to 8:00 p.m., although during busy periods her workday sometimes stretched to 8:40 p.m. (*Id.*). Plaintiff did not receive an uninterrupted lunch break. (*Id.*). As such, Plaintiff worked approximately forty-seven-and-a-half to fifty hours per week during this period. (*Id.*).

3

From June 1, 2021, to September 10, 2021, Plaintiff worked six days a week, with Sundays off. (FAC ¶ 39). Her hours during this period were the same as the prior period, 10:30 a.m. to 8:00 p.m., but she sometimes worked until 8:40 p.m. during busy periods. (*Id.*). During this timeframe, Plaintiff worked fifty-seven to sixty hours per week. (*Id.*).

During the entirety of Plaintiff's employment with Defendants, she was paid on a bi-weekly basis in cash. (FAC ¶ 41). Plaintiff's wages consisted of a "flat daily base salary and commissions," the latter of which comprised ten percent of the service fees paid by returning customers who chose Plaintiff to do their lashes. (*Id.* ¶ 42). From April 29, 2021, to May 31, 2021, Defendants did not pay Plaintiff any base salary. (*Id.* ¶ 43). From June 1, 2021, to July 31, 2021, Plaintiff received a base salary of $50 per day. (*Id.*). And from August 1, 2021, to September 10, 2021, Plaintiff received a base salary of $80 per day. (*Id.*). Defendants did not pay Plaintiff any commissions during her first two months of employment; beginning at the end of June 2021 through the end of Plaintiff's employment, Plaintiff received between $10 and $20 per day in commissions. (*Id.* ¶ 44). Plaintiff did receive tips from customers during her employment with Defendants; however, Defendants do not suggest that these tips were taken into account when determining her wages. (*Id.* ¶ 45).

Plaintiff claims that Defendants have still not paid her the base salary she is owed from September 2021 — a total of $640. (FAC ¶ 46). Nor did Defendants ever pay Plaintiff overtime premiums for her time worked over forty hours per week. (*Id.* ¶ 48). Likewise, Defendants did not pay Plaintiff "spread

of hours premiums" for days when she worked more than ten hours, and did not provide her with a written wage notice in Chinese (Plaintiff's primary language) when she began her employment. (*Id.* ¶¶ 49-50). Finally, Plaintiff alleges that Defendants did not provide her with a correct wage statement every time she was paid. (*Id.* ¶ 51).

**B.    Procedural Background**

Plaintiff initiated this case by filing a complaint on March 29, 2022. (Dkt. #1). After the parties entered into a stipulation extending Defendants' time to respond to the complaint (Dkt. #8), Defendants filed a motion to dismiss the complaint on June 2, 2022 (Dkt. #9). However, because Defendants failed to comply with this Court's Individual Rules of Practice in Civil Cases, which rules require that parties submit a pre-motion letter before filing a motion to dismiss, the Court deemed the motion "premature." (Dkt. #10). Still, the Court found that "there may be some merit to the arguments made" in Defendants' motion, and thus directed Plaintiff to file a letter stating whether she wished to amend the complaint to address any issues. (*Id.*). On June 15, 2022, Plaintiff requested an additional fourteen days to oppose Defendants' motion to dismiss. (Dkt. #15). The Court granted Plaintiff's request, and again noted that if Plaintiff were to file an amended complaint, the Court would deny Defendants' motion to dismiss without prejudice. (Dkt. #16). Plaintiff opted to file an amended complaint, and filed the FAC on June 29, 2022. (Dkt. #21).

Following the filing of the FAC, the Court denied Defendants' motion to dismiss as moot, and directed Defendants to indicate whether they wished to move to dismiss the FAC or to otherwise answer it by July 15, 2022. (Dkt. #22). In line with the Court's directive, Defendants filed a letter on July 15, 2022, noting that they intended to move to dismiss the FAC and requesting a briefing schedule. (Dkt. #23). The Court then entered a briefing schedule for Defendants' motion. (Dkt. #24).

On August 15, 2022, Defendants filed their motion to dismiss the FAC and supporting papers. (Dkt. #25-26). On September 12, 2022, Plaintiff filed a cross-motion for leave to file a second amended complaint (the "SAC") to add Lash Moment Studio as a new defendant to this case, on the proffered basis that the new entity was a "substantial continuity" of Lash Princess. (Dkt. #27).[2] Plaintiff filed a combined memorandum of law in support of its cross-motion and in opposition to Defendants' motion to dismiss the FAC, as well as a declaration with exhibits that included Plaintiff's proposed SAC. (Dkt. #28-29). On September 23, 2022, Defendants filed a letter request for an extension of time to file their reply in support of their motion to dismiss, and to oppose Plaintiff's cross-motion to amend. (Dkt. #30). On September 26, 2022, the Court granted Defendants' request. (Dkt. #31).

On October 17, 2022, Defendants filed a combined opposition to Plaintiff's cross-motion and reply in support of their motion to dismiss, as well

---

[2]     Specifically, Plaintiff wishes to add "Lash Princess 57 Inc. *d/b/a* Lash Moment Studio *d/b/a* Lash Princess" as a defendant.

as a supporting declaration and exhibit.  (Dkt. #32).  Three days later, on

October 20, 2022, Plaintiff requested an additional three weeks to file a reply in

support of her cross-motion, and noted that the parties were exploring a

settlement.  (Dkt. #33).  The Court granted Plaintiff's request, and directed

Plaintiff to file her reply by November 10, 2022, if the parties had not reached a

settlement.  (Dkt. #34).  Plaintiff then filed her reply and supporting papers on

November 10, 2022.  (Dkt. #35-36).

## DISCUSSION

### A.   The Interaction Between Plaintiff's Cross-Motion to Amend and Defendants' Motion to Dismiss

"Where plaintiffs seek to amend their complaint while a motion to

dismiss is pending, a court 'has a variety of ways in which it may deal with the

pending motion to dismiss, from denying the motion as moot to considering the

merits of the motion in light of the amended complaint.'"  *Haag* v. *MVP Health

Care*, 866 F. Supp. 2d 137, 140 (N.D.N.Y. 2012) (quoting *Roller Bearing Co. of

Am., Inc.* v. *Am. Software, Inc.*, 570 F. Supp. 2d 376, 384 (D. Conn. 2008)).

Where, as here, "the primary claims remain the same" between the proposed

amended complaint and the complaint which a defendant has moved to

dismiss, the Court may consider "the merits of the motion to dismiss in light of

the proposed amended complaint."  *Doe* v. *N.Y.S. Off. of Child. & Fam. Servs.*,

No. 20 Civ. 1195 (BKS) (CFH), 2021 WL 2826457, at *3 (N.D.N.Y. July 7, 2021);

*see also, e.g.*, *Costello* v. *Town of Huntington*, No. 14 Civ. 2061 (JS) (GRB), 2015

WL 1396448, at *1 (E.D.N.Y. Mar. 25, 2015) ("Plaintiffs moved to amend the

[c]omplaint while [d]efendant's motion to dismiss was pending ....  [B]ecause

7

[d]efendant has had an opportunity to respond to the proposed [a]mended [c]omplaint, the Court will consider the merits of [d]efendant's motion in light of the allegations in the proposed [a]mended [c]omplaint."). Even where a proposed amended complaint would add new defendants, a court may still grant a motion to dismiss — or, conversely, deny a requested amendment as futile — if the proposed amended complaint fails to state a claim. *See, e.g.*, *Weir* v. *City of New York*, No. 05 Civ. 9268 (DFE), 2009 WL 1403702, at *1 (S.D.N.Y. May 19, 2009); *see also Shearon* v. *Comfort Tech Mech. Co.*, 936 F. Supp. 2d 143, 160 (E.D.N.Y. 2013); *Hunter* v. *Deutsche Lufthansa AG*, 863 F. Supp. 2d 190, 202 (E.D.N.Y. 2012).

Although Plaintiff's proposed amended complaint would add a new party — Lash Moment Studio — to this case, it is appropriate to consider both the motion to amend and the motion to dismiss at this juncture. Because Plaintiff's proposed amended complaint adds no new factual content or claims beyond allegations that Lash Moment Studio is a substantial continuity of Lash Princess, the Court will consider whether the claims in the FAC are sufficiently pleaded such that the proposed SAC would not be futile. Accordingly, the Court first considers Plaintiff's motion to amend, and then separately considers Defendants' motion to dismiss.

## B.   The Court Grants Plaintiff's Motion to Amend

### 1.   Motions to Amend Under Rule 15

A motion to amend is generally governed by Rule 15(a) of the Federal Rules of Civil Procedure, which states that "[t]he court should freely give leave

when justice so requires." Fed. R. Civ. P. 15(a)(2).  Notwithstanding the liberal

nature of the general rule, "it is within the sound discretion of the court

whether to grant leave to amend."  *John Hancock Mut. Life Ins. Co.* v. *Amerford

Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994).  Regarding the use of this

discretion, the Supreme Court has stated:

> In the absence of any apparent or declared reason —
> such as undue delay, bad faith or dilatory motive on the
> part of the movant, repeated failure to cure deficiencies
> by amendments previously allowed, undue prejudice to
> the opposing party by virtue of allowance of the
> amendment, futility of amendment, etc. — the leave
> should ... be freely given.

*Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (internal quotation marks omitted).

The party opposing a motion to amend typically bears the burden of

establishing that the amendment should be denied.  *See Cummings-Fowler* v.

*Suffolk Cnty. Cmty. Coll.*, 282 F.R.D. 292, 296 (E.D.N.Y. 2012).

While motions to amend are generally governed by Rule 15(a), Rule 21

controls if the proposed amendment adds new parties.  *Momentum Luggage &

Leisure Bags* v. *Jansport, Inc.*, No. 00 Civ. 7909 (DLC), 2001 WL 58000, at *1

(S.D.N.Y. Jan. 23, 2001) (citation omitted).  Rule 21 states that a party may be

added to an action "at any time, on just terms[.]"  Fed. R. Civ. P. 21.  In

deciding whether to permit joinder, courts apply the "same standard of

liberality afforded to motions to amend pleadings under Rule 15."  *Addison* v.

*Reitman Blacktop, Inc.*, 283 F.R.D. 74, 79 (E.D.N.Y. 2011) (internal citations

and quotation marks omitted); *see also Amaya* v. *Roadhouse Brick Oven Pizza,

Inc.*, 285 F.R.D. 251, 253 (E.D.N.Y. 2012) ("There is ... little practical difference

between Rule 15 and Rule 21 since they both leave the decision whether to permit or deny an amendment to the district court's discretion.").

When evaluating a motion for leave to amend a complaint to add a defendant, courts evaluate (i) "whether the amendment to add ... a defendant would be futile ... [*i.e.*, that the complaint as amended] could not withstand a Rule 12(b)(6) motion to dismiss"; (ii) "whether [the plaintiff has] exhibited undue delay in bringing the motion to amend"; (iii) whether the amendment would be unfairly prejudicial, *i.e.*, resulting in undue or substantial prejudice such as "when the nonmoving party shows that it would be fairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered"; and (iv) whether the plaintiff has "demonstrated bad faith so that an amendment to the [c]omplaint should be prohibited." *Allstate Ins. Co.* v. *Elzanaty*, 916 F. Supp. 2d 273, 303-04 (E.D.N.Y. 2013). Considering these factors, courts should generally permit parties to amend their pleadings to add new parties unless there is evidence of "undue delay, bad faith, dilatory tactics, undue prejudice to the party to be served with the proposed pleading, or futility." *Bryant* v. *Carlisle Carrier Corp.*, No. 13 Civ. 578 (JG), 2014 WL 712592, at *1 (E.D.N.Y. Feb. 25, 2014) (citing *Quaratino* v. *Tiffany & Co.*, 71 F.3d 58, 66 (2d Cir. 1995) (citations omitted)).

As on a motion to dismiss, a court is generally limited to considering a narrow universe of documents on a motion to amend a complaint. *See, e.g.*, *Warren* v. *Ultimate Fitness Grp., LLC*, No. 19 Civ. 10315 (KMK), 2021 WL 4239246, at *6 (S.D.N.Y. Sept. 17, 2021) ("[T]he Court will not normally

10

consider documents provided by defendants in opposition to a motion to amend[.]" (citing *Brass* v. *Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993))). Thus, "[i]n deciding a motion to dismiss or a motion to amend, the Court may consider, in addition to the complaint, documents that plaintiff attached to the pleadings, documents referenced in the complaint, documents that plaintiff relied on in bringing the action which were in plaintiff's possession or of which plaintiff had knowledge, and matters of which judicial notice may be taken." *White* v. *Anchor House, Inc.*, No. 11 Civ. 3232 (NGG) (LB), 2011 WL 5402162, at *1 (E.D.N.Y. Nov. 3, 2011) (citing *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)); *accord United States ex rel. Foreman* v. *AECOM*, 19 F.4th 85, 106 (2d Cir. 2021).

### 2.    Analysis

Plaintiff proposes to amend the FAC to add Lash Moment Studio as a defendant on the theory that it is the "substantial continuity" of Lash Princess. (Pl. Opp. 4). In particular, Plaintiff argues that Lash Moment Studio satisfies the multi-part test that courts apply in this Circuit for determining whether a corporate entity is the "substantial continuity" of a predecessor entity (*id.* at 4-6), and that Plaintiff has shown both good cause for amendment and a lack of undue prejudice to Defendants (*id.* at 7-8). Defendants counter that amendment would be futile, because Lash Moment Studio is not the substantial continuity of Lash Princess, and that the Court should deny amendment in any event because "the cross motion is undu[ly] delayed[,]" resulting in prejudice to Defendants. (Def. Reply 2-8).

Working in reverse order, the Court finds that there has not been undue delay or bad faith in bringing the cross-motion to amend, and consequently that there is no unfair prejudice to Defendants.  Plaintiff offers good reason for amendment.  She states that she did not learn that Lash Moment Studio opened or that Lash Princess closed until August 2022, nearly concurrent with Defendants' filing of their motion to dismiss.  (Pl. Opp. 7).  Thereafter, Plaintiff claims that she conducted research to corroborate her understanding that Lash Moment Studio is in fact the substantial continuity of Lash Princess. (*Id.*).  As is evident from her cross-motion, Plaintiff believes that Defendants will not be able to afford relief in this case should they be found liable, because Lash Princess has permanently closed.  (*Id.* at 6).  Thus, without amending the FAC to add Lash Moment Studio, survival of Defendants' motion to dismiss would be a Pyrrhic victory, as Plaintiff would be unable to obtain meaningful relief down the line.  The Court will not find bad faith based on this record.

Further, Defendants do not meaningfully contend that there has been prejudice or delay here.  Defendants assert that Plaintiff's cross-motion has delayed this case and has created an additional cost for Defendants.  Yet Plaintiff cross-moved to amend immediately after Defendants filed their motion to dismiss, and this case has not progressed since the motions have been filed. There has been no discovery in this case, and in the lifecycle of a lawsuit, this case is in its infancy.  Thus, there can be no colorable claim of delay here.  *See, e.g.*, *Elzanaty*, 916 F. Supp. 2d at 304 ("This case is still in the early stages of litigation, as discovery has not been completed by any party.  Thus in the

12

Court's view, permitting this amendment would not substantially delay the final disposition of the action."); *see also Rachman Bag Co.* v. *Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995) (noting that delay alone "does not usually warrant denial of leave to amend").

Without a showing of meaningful delay, Defendants have likewise failed to bear their burden of showing that they face substantial prejudice here. *See, e.g.*, *Elzanaty*, 916 F. Supp. 2d at 304 ("The main concern is undue or substantial prejudice — namely, when the nonmoving party shows that it would be fairly disadvantaged or deprived of the opportunity to present facts or evidence that it would have offered."). In analyzing "prejudice," courts consider whether the amendment would: (i) require the opponent to "expend significant additional resources to conduct discovery and prepare for trial," (ii) significantly prolong the resolution of the action, or (iii) "prevent the plaintiff from bringing a timely action in another jurisdiction." *Monahan* v. *N.Y.C. Dep't. of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000). Given Plaintiff's theory that Lash Moment Studio is the substantial continuity of Lash Princess and that the Individual Defendants here are involved with that entity, Lash Moment Studio may already be on notice of Plaintiff's claims. Further, there are no new claims in the SAC, which suggests that there will not be substantial new costs incurred due to Plaintiff's amendment. *See, e.g.*, *Sun* v. *Li Ya Nail Spa Inc.*, No. 18 Civ. 6609 (JS) (SIL), 2021 WL 9507723, at *6 (E.D.N.Y. Aug. 3, 2021) ("[Plaintiff] does not seek to make any factual allegations that differ in any way from the

13

allegations contained in her original [c]omplaint.  Accordingly, the Court concludes that the [a]mended [c]omplaint will not prejudice [d]efendants.").

Futility presents a more interesting issue.  Because the Court considers Defendants' motion to dismiss the FAC later in this Opinion, it discusses here only whether Plaintiff has adequately pleaded that Lash Moment Studio is the substantial continuity of Lash Princess.  "In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)."  *Rotblut* v. *333 E. 66th St. Corp.*, No. 96 Civ. 5228 (JSM) (SEG), 1996 WL 586353, *1 (S.D.N.Y. Oct. 11, 1996); *see also Health-Chem Corp.* v. *Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("Although Fed. R. Civ. P. 15(a) provides that leave to amend should be given freely when justice so requires, where, as here, there is no merit in the proposed amendments, leave to amend should be denied."); *Mason Tenders Dist. Council of Greater N.Y.* v. *Phase Constr. Servs., Inc.*, 318 F.R.D. 28, 40-41 (S.D.N.Y. 2016) ("Joinder [under Rule 21] may be denied as futile if the proposed pleading would not withstand a motion to dismiss pursuant to Rule 12(b)(6)[.]").[3]  Because Plaintiff claims that Lash Moment Studio is the substantial continuity of Lash Princess, and allegations seeking to establish Lash Moment Studio as Lash Princess's successor are the only new allegations in the proposed SAC (*see* SAC ¶¶ 37-43 (factual allegations concerning Lash

---

[3]      The Court discusses the standard of review under Rule 12(b)(6) *infra*.

Moment Studio's relation to Lash Princess)), the Court must determine whether this new contention is adequately pleaded.

"Federal courts sitting in New York employ either a New York common law standard or a 'substantial continuity' test in determining whether a defendant may be held liable for a previous employer's labor law violations." *Pena* v. *Metro. Wireless Anandpur Inc.*, No. 21 Civ. 2239 (LJL), 2021 WL 5054368, at *5 (S.D.N.Y. Nov. 1, 2021) (quoting *Moreno* v. *Ramos*, No. 17 Civ. 9439 (LTS), 2021 WL 637563, at *3 (S.D.N.Y. Feb. 17, 2021)). The Second Circuit has not "decided whether the substantial continuity test or the traditional [common law] test applies to FLSA claims." *Li* v. *New Ichiro Sushi Inc.*, Nos. 20-1783-cv, 20-1785-cv, 2021 WL 6105491, at *2 (2d Cir. Dec. 21, 2021) (summary order). "Under the common law test, a business buyer is liable for the seller's debts only when '[i] a buyer ... formally assumes a seller's debts; [ii] [the] transactions [are] undertaken to defraud creditors; [iii] a buyer ... de facto merged with a seller; [or] [iv] a buyer ... is a mere continuation of a seller.'" *Diaz* v. *Slayton One Cleaner Inc.*, No. 17 Civ. 1311 (LTS), 2018 WL 4935831, at *3 (S.D.N.Y. Oct. 11, 2018) (alterations in original) (quoting *Cargo Partner AG* v. *Alba trans, Inc.*, 352 F.3d 41, 45 (2d Cir. 2003)). Under the substantial continuity test, courts consider:

> [i] whether the successor company had notice of the charge or pending lawsuit prior to acquiring the business or assets of the predecessor; [ii] the ability of the predecessor to provide relief; [iii] whether there has been a substantial continuity of business operations; [iv] whether the new employer uses the same plant; [v] whether he uses the same or substantially the same

15

work force; [vi] whether he uses the same or
substantially the same supervisory personnel;
[vii] whether the same jobs exist under substantially the
same working conditions; [viii] whether he uses the
same machinery, equipment, and methods of
production; and [ix] whether he produces the same
product.

*Pareja* v. *184 Food Corp.*, No. 18 Civ. 5887 (JPO) (SDA), 2021 WL 3109621, at
*9 n.9 (S.D.N.Y. July 22, 2021) (quoting *Battino* v. *Cornelia Fifth Ave., LLC*, 861
F. Supp. 2d 392, 404 (S.D.N.Y. 2012)).  "Although no one factor" of the
substantial continuity test "is determinative, courts have recognized that the
first two factors, [*i.e.*,] notice of the claim prior to acquisition and the ability of
the predecessor to provide relief, [are] 'critical.'"  *Marte* v. *Westbury Mini Mart,
Inc.*, No. 16 Civ. 53 (SJF) (ARL), 2017 WL 9485667 at *9 (E.D.N.Y. Jan. 18,
2017) (quoting *Lewis* v. *Blackman Plumbing Supply L.L.C.*, 51 F. Supp. 3d 289,
314 (S.D.N.Y. 2014)), *report and recommendation adopted*, 2017 WL 838194
(E.D.N.Y. Mar. 3, 2017).

Plaintiff's amendment is not futile under either standard.  In the
proposed SAC, Plaintiff pleads that (i) Lash Princess has permanently closed;
(ii) the same Individual Defendants in this case opened Lash Moment Studio
one block away from Lash Princess's old Manhattan location; (iii) Lash Princess
expressly held itself out as having moved and having renamed itself Lash
Moment Studio; (iv) Lash Moment Studio provides all of the same services as
Lash Princess; and (v) Lash Moment Studio listed Lash Princess's closed
location as a store location on its website.  (SAC ¶¶ 37-43).  Taking these

allegations to be true at this stage in the litigation, the Court finds that they satisfy both the common law test and the "substantial continuity" test.[4]

Beginning with the common law test, the Court finds that Plaintiff's allegations that the Individual Defendants closed Lash Princess and opened Lash Moment Studio; that Lash Moment Studio provides the same services as Lash Princess; and that Lash Moment Studio is otherwise closely related to Lash Princess in terms of continuity of operations, are sufficient at this stage. *See, e.g.*, *Payamps* v. *M & M Convenience Deli & Grocery Corp.*, No. 16 Civ. 4895 (LDH) (SJB), 2019 WL 8381264, at *10 (E.D.N.Y. Dec. 9, 2019) (finding that allegations that individual defendants dissolved prior entity and that new entity operated out of same location, provided same services, and was otherwise a continuation of prior business sufficient under common law test); *Lewis*, 51 F. Supp. 3d at 313 ("To impose successor liability under either the 'de facto merger' or the 'mere continuation' exception, a plaintiff must prove 'continuity of ownership' between the predecessor and the successor corporations."); *Omar* v. *1 Front St. Grimaldi, Inc.*, No. 16 Civ. 5824 (LDH) (CLP), 2018 WL 2121550, at *4 (E.D.N.Y. May 8, 2018) ("Given the allegations regarding the transfer of the pizzeria to a new company only days after the initial [c]omplaint was filed, but where the [individual defendant] remains the

---

[4]    The Court notes that although the New York common law test and substantial continuity test vary to some degree, "a number of district courts in this Circuit have found that the outcome would be the same no matter which test is applied," even if "the case for successor liability may be more or less compelling" depending on which test is employed.   *Chen* v. *DG & S NY, Inc.*, 406 F. Supp. 3d 216, 223 (E.D.N.Y. 2016) (internal quotation marks and citations omitted).   Plaintiff principally argues under the substantial continuity test, though the Court considers both tests.

owner, the location and type of business remain the same, and the employees are largely the same, the Court finds that there is a plausible claim of successor liability alleged in the [c]omplaint.").  Although Plaintiff concedes that Lash Moment Studio does not operate in exactly the same location as Lash Princess, on a motion to amend this Court is obliged to construe the facts in Plaintiff's favor, and "[t]he question of successor liability … is largely a factual one that needs to be developed through discovery."  *1 Front St. Grimaldi, Inc.*, 2018 WL 2121550, at *4.  Indeed, some courts have noted, in applying analogous state law, that "[t]he single most important factor for applying the mere continuation theory is the continuity of ownership and management."  *Post* v. *Killington, Ltd.*, No. 07 Civ. 252 (CR), 2010 WL 3323659, at *9 (D. Vt. May 17, 2010) (internal quotation marks and citation omitted) (applying Vermont law), *aff'd*, 424 F. App'x 27 (2d Cir. 2011) (summary order).  The SAC pleads as much.

In the same vein, Plaintiff clears the less "rigorous" substantial continuity hurdle.  *See, e.g.*, *Gallo* v. *Wonderly Co., Inc.*, No. 12 Civ. 1868 (RFT), 2014 WL 36628, at *13 (N.D.N.Y. Jan. 6, 2014) (referring to the "traditional common law test" as "more rigorous"); *Franco* v. *Jubilee First Ave. Corp.*, No. 14 Civ. 7729 (SN), 2016 WL 4487788, at *9 (S.D.N.Y. Aug. 25, 2016) ("The substantial continuity test is more flexible than the traditional common law test.").  Plaintiff's allegations in the SAC that the Individual Defendants are owners or otherwise opened Lash Moment Studio are sufficient to establish Lash Moment Studio's knowledge and notice of the alleged wage and hour

violations.  *See, e.g.*, *Mei Yue Gao* v. *Graceful Servs., Inc.*, No. 18 Civ. 4005 (SN), 2019 WL 5395514, at *5 (S.D.N.Y. Oct. 22, 2019) (finding that claim that individual defendant was owner of predecessor entity and partial owner of successor entity was sufficient to allege that successor entity "had notice of the claims" under the substantial continuity test).  Similarly, the allegation that Lash Princess is permanently closed supports the inference that it cannot provide relief.  *See, e.g.*, *id.* at *6 (noting that "the complaint raises a question as to whether the formal business of [the predecessor entity] continues to exist" such that the second prong of the substantial continuity inquiry was satisfied); *Franco*, 2016 WL 4487788, at *10 ("[Predecessor entity] is no longer able to provide the relief requested to the plaintiffs because the company is no longer in operation.").

Having successfully pleaded these two "indispensable" parts of the substantial continuity test, Plaintiff has pleaded the substantial continuity test despite the fact that Lash Moment Studio operates from a different location. (Pl. Opp. 6).  As noted, Plaintiff alleges that the same supervisory personnel exist by dint of claiming that the ownership is the same, and that Lash Moment Studio provides the same services as Lash Princess.  Further, it is fair to infer that there is a substantial continuity of the business operations and that the same jobs exist at Lash Moment Studio, based on Plaintiff's allegations in the SAC that Lash Moment Studio provides the same lash extension services as Lash Princess.  *See, e.g.*, *Battino*, 861 F. Supp. 2d at 407 (holding, in summary judgment context, that "it is reasonable to infer, since the businesses were

19

both spas, and [successor entity] purchased the operating assets of [predecessor], that these factors would likely support a conclusion that there was substantial continuity," and that "since both businesses were beauty spas, it is reasonable to infer that the products sold (in other words, the services offered) were substantially the same"). Because the "question of whether there is substantial continuity between a predecessor and a successor is primarily factual in nature and is based upon the totality of the circumstances of a given situation[,]" *N.Y.S. Teamsters Conf. Pension & Ret. Fund* v. *C&S Wholesale Grocers, Inc.*, 24 F.4th 163, 178 (2d Cir.) (internal quotation marks omitted), *cert. denied*, 142 S. Ct. 2876 (2022), the Court finds that Plaintiff has successfully pleaded that Lash Moment Studio is a substantial continuity of Lash Princess.

Try as they might, Defendants cannot defeat these allegations at this stage through fact-based arguments. In arguing that Plaintiff's motion to amend is futile, Defendants focus on disputed facts, not application of the law to Plaintiff's allegations. (*See* Def. Reply 4 ("Contrary to Plaintiff[']s allegation, the ownership of Lash Moment Studio [is] not [I]ndividual [D]efendants in this action[.]"), 5-6 ("[T]he supervisor[s] of Lash Moment Studio [are] not the [I]ndividual [D]efendants in this action."), 7 ("After Lash Moment Studio purchased the business ... it opened a new store at a different location, established its new websites, recruited a group of new employees[,] and managed the new store [with] different supervisor[s][.]")). Defendants make these arguments based on the Declaration of Oscar Lin, attached to their reply

20

brief. Yet "it is well established that" in the analogous context of a motion to dismiss, "a court may not 'consider factual averments contained in affidavits.'" *Lora* v. *Centralized Mgmt. Serv., Inc.*, No. 18 Civ. 4253 (NSR), 2020 WL 3173025, at *2 (S.D.N.Y. June 12, 2020) (quoting *Amadei* v. *Nielsen*, 348 F. Supp. 3d 145, 155 (E.D.N.Y. 2018)). Once these factual disputes are put to the side, Defendants cannot argue that Plaintiff's allegations of substantial continuity are insufficient. Thus, Plaintiff's proposed amendment is not futile, and the Court grants her cross-motion for leave to amend.

## C. The Court Denies Defendants' Motion to Dismiss[5]

As noted, because the parties have fully briefed Defendants' motion to dismiss the FAC, and because the SAC adds no new factual content going to Plaintiff's legal claims, the Court will consider Defendants' motion to dismiss. For the reasons stated in the remainder of this Opinion, the Court denies Defendants' motion to dismiss.

### 1. Motions to Dismiss Under Rule 12(b)(6)

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in [a] [p]laintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks and citation omitted). "To survive a motion to dismiss, a complaint must

---

[5]     Because the FAC and SAC are identical beyond the new allegations concerning Lash Moment Studio as the corporate successor to Lash Princess, the Court cites to the FAC for the remainder of this Opinion, as the parties do in their briefing.

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)).  While the plausibility requirement "is not akin to a 'probability requirement' ... it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* Toward that end, a plaintiff must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.*  Moreover, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557).

### 2.    The FLSA Applies to Plaintiff's Employment with Defendants

In the FAC and SAC, Plaintiff alleges that she is covered by the FLSA based on an "enterprise coverage" theory — that is, that she worked for an "enterprise engaged in commerce" within the meaning of the FLSA.  (FAC ¶ 14). Defendants disagree, contending that Plaintiff has pleaded only "threadbare legal conclusion[s]" to establish enterprise coverage, and that she has likewise failed to plead that the FLSA applies to the Individual Defendants.  (Def. Br. 5). Plaintiff counters by referring to her allegations that (i) Lash Princess has four to seven employees; (ii) it was open at least six days per week; and (iii) it did at least $500,000 in sales per year.  (Pl. Opp. 10-11).  Separately, Plaintiff argues that the Court can find that she works with goods or materials that have moved or been produced in interstate commerce, based on the inference that

she works with tools, machines, or products that originate outside of New York. (*Id.*).  The Court agrees with both points.

### a.    The Relevant FLSA Provisions

The FLSA provides federal minimum wage and overtime protections for employees that fall within its scope.  29 U.S.C. § 206 (FLSA minimum wage provisions); 29 U.S.C. § 207 (FLSA overtime provisions).  By its terms, the FLSA covers an employee who either (i) "is engaged in commerce or in the production of goods for commerce"; or (ii) "is employed in an *enterprise* engaged in commerce or in the production of goods for commerce."  *Jacobs* v. *N.Y. Foundling Hosp.*, 577 F.3d 93, 96 (2d Cir. 2009) (quoting 29 U.S.C. § 207(a)(1))).  As the FLSA is a federal law, this "commerce" must, of course, be "interstate."  *Aponte* v. *Clinton St. Pizza Inc.*, No. 20 Civ. 2037 (KMW), 2021 WL 1961646, at *3 (S.D.N.Y. May 17, 2021).  These "two categories are commonly referred to as 'individual' and 'enterprise' coverage, respectively."  *Jacobs*, 577 F.3d at 96 (citing *Tony & Susan Alamo Found.* v. *Sec'y of Labor*, 471 U.S. 290, 295 n.8 (1985) ("Prior to the introduction of enterprise coverage in 1961, the only individuals covered under the Act were those engaged directly in interstate commerce ....  Enterprise coverage substantially broadened the scope of the Act to include any employee of an enterprise engaged in interstate commerce, as defined by the Act.").

An individual is covered by enterprise coverage when she is employed by an employer who (i) "has employees engaged in commerce or in the production of goods for commerce, or has employees handling, selling, or otherwise

working on goods or materials that have been moved in or produced for commerce by any person"; and (ii) the enterprise has an "annual gross volume of sales made or business done [] not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated)." 29 U.S.C. § 203(s)(1). "Enterprise coverage has been interpreted broadly by the courts." *Boekemeier* v. *Fourth Universalist Soc'y in City of New York*, 86 F. Supp. 2d 280, 285 (S.D.N.Y. 2000). "So long as the employer achieves an annual gross business volume of $500,000 or more, 'all of the employer's employees are covered under [FLSA] as long as at least some handle, sell, or otherwise work on goods or materials that have been moved in or produced for commerce.'" *Ethelberth* v. *Choice Sec. Co.*, 91 F. Supp. 3d 339, 355 (E.D.N.Y. 2015) (quoting *Jones* v. *E. Brooklyn Sec. Serv. Corp.*, No. 11 Civ. 1021 (JG), 2012 WL 3235784, at *4 (E.D.N.Y. Aug. 7, 2012)).

What is more, courts have found that "[e]ven 'local business activities fall within the reach of the FLSA when an enterprise employs workers who handle goods or materials that have moved or been produced in interstate commerce.'" *Shu Lan Chen* v. *Gypsophila Nail & Spa Inc.*, No. 15 Civ. 2520 (JPO), 2015 WL 3473510, at *3 (S.D.N.Y. June 2, 2015) (quoting *Archie* v. *Grand Cent. P'ship, Inc.*, 997 F. Supp. 504, 530 (S.D.N.Y. 1998)). As such, courts have found that enterprise coverage exists where a plaintiff pleads that she handles certain supplies, from which the court can draw the "logical" inference that such supplies "have moved in interstate commerce." *See, e.g., Galicia* v. *63-68 Diner Corp.*, No. 13 Civ. 3689 (PKC), 2015 WL 1469279, at *2 (E.D.N.Y. Mar. 30,

2015) ("[I]t is logical to infer that [defendant] has employees who handle goods or materials that have moved in interstate commerce, including [p]laintiff, who worked as a busboy at the diner" (collecting cases)); *Jones*, 2012 WL 3235784, at *4 ("[E]nterprise coverage applies so long as some of the employees wear uniforms or use items such as radios, books, flashlights, clipboards, brooms, bags, and cleaning supplies that have moved in interstate commerce."); *Rodriguez* v. *Almighty Cleaning, Inc.*, 784 F. Supp. 2d 114, 121 (E.D.N.Y. 2011) ("[C]ases discussing this element in an FLSA context have held that it is logical to conclude that janitorial/cleaning supplies have moved in interstate commerce."); *Archie*, 997 F. Supp. at 530 ("[V]irtually every enterprise in the nation doing the requisite dollar volume of business is covered by the FLSA." (internal quotation marks and citations omitted)).

### b.   Analysis

Although Plaintiff could have more comprehensively alleged facts to establish enterprise coverage, the Court finds under the liberal standards of the FLSA that both the FAC and SAC adequately plead that Plaintiff worked for an enterprise employing workers who handle goods or materials that have moved or been produced in interstate commerce.  While the Court agrees that allegations based on "information and belief" cannot simply track statutory language, Plaintiff pleads that she worked as a lash technician for Defendants and provided lash extensions to customers.  (FAC ¶¶ 8, 36).  She further alleges that Lash Princess had over "[f]ive [h]undred [t]housand [d]ollars ... per year" in gross sales.  (*Id.* ¶ 12).  Though these former allegations do not

explicitly state that Plaintiff worked with goods or materials that have moved in interstate commerce, this Court agrees with those cases listed above that have drawn the logical inference that any business with sales over $500,000 implicates materials that have moved in interstate commerce. *See, e.g., Shu Lan Chen*, 2015 WL 3473510, at *4 (finding plaintiff adequately pleaded enterprise coverage because complaint alleged that plaintiff was employed as nail technician and beautician who performed various cosmetic services for customers and cleaning tasks because it was "logical to infer" that such job duties entailed "handl[ing] goods or materials that have moved in interstate commerce" (internal quotation marks and citations omitted)); *Fermin* v. *Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 33 (E.D.N.Y. 2015) ("As a restaurant, it is reasonable to infer that [defendant] requires a wide variety of materials to operate, for example, foodstuffs, kitchen utensils, cooking vessels, cleaning supplies, paper products, furniture, and more.  It is also reasonable to infer that some of these materials moved or were produced in interstate commerce."); *Cabrera* v. *Canela*, 412 F. Supp. 3d 167, 174 (E.D.N.Y. 2019) (same).

So too here.  Plaintiff argues that it is reasonable for the Court to assume that she has worked with machines or other equipment that have moved in interstate commerce.  The Court agrees.  The Court also finds it reasonable to infer that any lash extensions used in the course of Plaintiff's work at Lash Princess also moved in interstate commerce.  As it relates to enterprise coverage, these allegations, combined with Plaintiff pleading based on

information and belief that Defendants realized more than $500,000 in gross
sales per year, are sufficient to survive a motion to dismiss.[6]

### 3.    Plaintiff Adequately Pleads That the Individual Defendants Were Her Employers

The Court next turns to the Individual Defendants' claims that the FAC
and SAC do not adequately allege FLSA and NYLL claims as to them.  To
determine who is an employer covered by the FLSA, courts within the Second
Circuit apply an "economic realities" test.  *See Herman* v. *RSR Sec. Servs. Ltd.*,
172 F.3d 132, 139 (2d Cir. 1999), *holding modified by Zheng* v. *Liberty Apparel
Co. Inc.*, 355 F.3d 61 (2d Cir. 2003).  Under this test, courts consider whether
there is "evidence showing [an individual's] authority over management,
supervision, and oversight of [the company's] affairs in general," *Irizarry* v.
*Catsimatidis*, 722 F.3d 99, 111 (2d Cir. 2013) (quoting *RSR Sec. Servs. Ltd.*,
172 F.3d at 140), as well as evidence showing whether the individual defendant
exercises control over employees by having the power to (i) hire and fire
employees, (ii) supervise and control employee schedules, (iii) determine the

---

[6]    Defendants also argue that Plaintiff has failed to allege that she was an employee under
the FLSA because there is no proof on file with the New York Division of Licensing
Services that Plaintiff holds certain licenses.  (Def. Br. 6). This argument is flawed for
several reasons, including that it presupposes that this Court can take notice of
documents outside Plaintiff's pleadings (and that Plaintiff contests).  Regardless, courts
within this Circuit have roundly rejected Defendants' theory, finding that the FLSA's
statutory definition of a covered employee has nothing to do with whether an employee
is licensed to perform certain work.  *See, e.g., Ji* v. *Aily Foot Relax Station, Inc.*, No. 19
Civ 11881 (VB), 2023 WL 35240, at *1 (S.D.N.Y. Jan. 4, 2023) ("[I]t is irrelevant whether
plaintiff was properly licensed to perform massages because it has no bearing on
whether he is an 'employee' under either the FLSA or the NYLL."); *Winfield* v. *Babylon
Beauty Sch. of Smithtown, Inc.*, 89 F. Supp. 3d 556, 572-73 (E.D.N.Y. 2015) (similarly
rejecting argument that New York state law prevented an unlicensed cosmetologist from
being an employee under the FLSA, and finding that state law would be preempted if it
led to such result).

rate and method of payment of employees, and (iv) maintain the company's employment records, *id.* at 114-16 (applying *Carter* v. *Dutchess Cmty. Coll.*, 735 F.2d 8 (2d Cir. 1984)).  Various courts have formulated different versions of this test, but what remains paramount is that the test "gauges the totality of the circumstances, and any relevant evidence may be examined so as to avoid having the test confined to a narrow legalistic definition."  *Vasto* v. *Credico (USA) LLC*, No. 15 Civ. 9298 (PAE), 2016 WL 4147241, at \*5 (S.D.N.Y. Aug. 3, 2016) (internal quotation marks and citations omitted).

Plaintiff has sufficiently pleaded that Individual Defendants Lin and Liu are "employers" in accordance with Second Circuit precedent.  The FAC and SAC plead that both Lin and Liu were founders, officers, or owners of Lash Princess.  (FAC ¶¶ 15-16).  Likewise, they allege that Lin determined Lash Princess's employees' wages, maintained relevant employment records, and had the ability to fire and hire employees.  (*Id.* ¶ 19).  Liu, too, had the ability to fire and hire employees, and was the individual who hired Plaintiff.  (*Id.* ¶ 20).  Finally, both Lin and Liu "participated in day-to-day management of Lash Princess in both Manhattan and Flushing[,]" and would sometimes cross-staff locations.  (*Id.* ¶ 21).  Such allegations easily pass the "economic realities" test such that Lin and Liu should be considered employers alongside Lash Princess.  *See, e.g.*, *Mahoney* v. *Amekk Corp.*, No. 14 Civ. 4131 (ENV) (VMS), 2016 WL 6585810, at \*8-9 (E.D.N.Y. Sept. 30, 2016) (finding plaintiff adequately pleaded that individual was an employer under the FLSA where plaintiff simply alleged that individual met three of the *Carter* factors), *report and recommendation*

28

*adopted*, 2016 WL 6601445 (E.D.N.Y. Nov. 7, 2016); *see also Chica* v. *Shallu Constr. Corp.*, No. 21 Civ. 869 (ARR) (SJB), 2022 WL 970744, at *6-8 (E.D.N.Y. Mar. 31, 2022) (comparing the four factors set out in *Carter* to the allegations in the complaint, and concluding that, despite one factor not being met, the "economic reality test on the whole militates in favor of finding").[7]  Here, Plaintiff has adequately pleaded that the Individual Defendants meet all four factors that courts within this Circuit consider most often in deciding whether an individual meets the definition of "employer," and at the motion to dismiss stage the Court will credit these allegations.[8]

### 4. Plaintiff Adequately Pleads That She Was Not Compensated for Overtime

The parties next disagree over whether Plaintiff has adequately alleged that she was not compensated for overtime, in violation of both the FLSA and the NYLL.  Defendants reiterate that Plaintiff's allegations on this point are "exceedingly vague" and essentially regurgitate the statutory elements of a claim.  (Def. Br. 6-7).  Plaintiff counters that her allegations setting forth the

---

[7]     Courts within this Circuit have likewise found that an individual is an employer for purposes of the NYLL where they would be considered an employer under the FLSA. *See, e.g.*, *Copantitla* v. *Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 308 n.21 (S.D.N.Y. 2011) ("Courts have interpreted the definition of employer under the [NYLL] coextensively with the definition used by the FLSA."); *Yang* v. *ACBL Corp.*, 427 F. Supp. 2d 327, 342 n.25 (S.D.N.Y. 2005) ("The economic reality test will be used to determine whether [the individual defendant] is [the plaintiff's] employer as defined under both state and federal law, as there is general support for giving [the] FLSA and the [NYLL] consistent interpretations." (internal quotation marks and citation omitted)).

[8]     Defendants appear to misunderstand the inquiry required for determining who is an employer under the FLSA, and argue that Lin and Liu are not employers because, *inter alia*, they are not "engage[d] in [] interstate commerce."  (Def. Br. 5).  But enterprise and individual coverage are concerned with defining the scope of *employees* covered by FLSA, while the "economic realities" test is concerned with defining an *employer*.

hours she worked during given weeks, and the hours she worked in excess of forty hours per week that were not compensated at the required rate, are sufficient to state a claim for violations of the FLSA's and NYLL's overtime provisions.  (Pl. Opp. 15-16).

Under Section 207(a)(1) of the FLSA, "for a workweek longer than forty hours" an employee must be compensated "at a rate not less than one and one-half times the regular rate at which he is employed" for the hours worked "in excess of" forty hours.  29 U.S.C. § 207(a)(1).  Thus, "to survive a motion to dismiss, [a plaintiff] must allege sufficient factual matter to state a plausible claim that [she] worked compensable overtime in a workweek longer than 40 hours."  *Lundy* v. *Cath. Health Sys. of Long Island Inc.*, 711 F.3d 106, 114 (2d Cir. 2013).  The Second Circuit has "recognized that it is employees' memory and experience that lead them to claim in federal court that they have been denied overtime in violation of the FLSA[,]" and thus has not required that plaintiffs "keep careful records and plead their hours with mathematical precision[.]"  *Dejesus* v. *HF Mgmt. Servs., LLC*, 726 F.3d 85, 90 (2d Cir. 2013).  This is not a demanding standard to meet on a motion to dismiss, and requires only that a plaintiff plead periods of hours worked in excess of forty hours per week and a concomitant failure to compensate the plaintiff at the required rate for such excess hours.  *See, e.g.*, *Brito* v. *Marina's Bakery Corp.*, No. 19 Civ. 828 (KAM) (MMH), 2022 WL 875099, at *10 (E.D.N.Y. Mar. 24, 2022) (finding complaint adequately stated claim for unpaid overtime in context of default where plaintiffs specifically pleaded weeks where they worked in excess of forty

hours per week, and that they were "never paid [] overtime compensation or spread of hours pay" (internal quotation marks omitted)); *Fermin*, 93 F. Supp. 3d at 44 ("Plaintiffs provide the Court with concrete allegations regarding the overtime that they worked.  For example, [plaintiff] states that he worked over forty hours a week from April 18, 2005 until March 24, 2013 without exception."); *Perry* v. *High Level Dev. Contracting & Sec. LLC*, No. 20 Civ. 2180 (AMD) (PK), 2022 WL 1018791, at *8 (E.D.N.Y. Mar. 16, 2022) (finding complaint adequately stated an overtime claim where the plaintiff alleged that she "worked an average of 50 hours per week" and "was not paid at an overtime rate of one-and-a-half times her regular rate of pay[,]" but instead "was paid a flat rate, regardless of the number of hours worked"), *report and recommendation adopted*, 2022 WL 1017753 (E.D.N.Y. Apr. 5, 2022).

Plaintiff has pleaded sufficient facts to make out a claim for overtime here.  Plaintiff does not simply allege that she worked more than forty hours per week and was never compensated at the required rate.  Instead, she provides a fairly detailed breakdown of the time she spent working for Defendants over two distinct periods, including the approximate days per week that she worked, the specific days she worked, her hours on those days, and how her schedule varied during busy periods.  (FAC ¶¶ 37, 39).  During both periods she discusses — one from April 29, 2021, to May 31, 2021, and one from June 1, 2021, to September 10, 2021 — Plaintiff alleges that she worked more than forty hours per week, and that she was not compensated at the required rate for hours in excess of forty per week, but rather at a flat daily

31

base salary. (FAC ¶¶ 37 (alleging that Plaintiff worked forty-seven-and-a-half to fifty hours per week during the earlier period), 39 (alleging that Plaintiff worked fifty-seven to sixty hours per week during the latter period), 42 (alleging that Plaintiff received a flat daily base salary regardless of hours worked)). In short, Plaintiff pleads that she was not compensated at the overtime rate for the hours worked in excess of forty per week, an allegation the Court must credit at the motion to dismiss stage.[9] These allegations are sufficiently detailed to distinguish the case from those on which Defendants rely. *See Perkins* v. *199 SEIU United Healthcare Workers E.*, 73 F. Supp. 3d 278, 290 (S.D.N.Y. 2014) (finding that overtime claims were not adequately pleaded where plaintiff failed to "identify[] any specific week or time period in which [he] worked overtime but was not lawfully paid for it").[10]

### 5.   Plaintiff Adequately Pleads Her Remaining State Law Claims

Finally, Defendants move to dismiss the remaining NYLL claims brought under Sections 142, 190, 191 (frequency of payments), 195 (notice and record-keeping requirements), and 198.[11] On these points, Defendants only cursorily

---

[9]   For example, doing a bit of simple math, one can calculate that during an average week in July 2021, Plaintiff was paid five dollars per hour, by multiplying Plaintiff's base salary in a given day ($50) by the average number of days worked (six), and dividing that number by 60 (the upper average of hours worked).

[10]   Because the Court has found that Plaintiff's FLSA overtime claim is properly pleaded, it likewise finds that her NYLL overtime claim is properly pleaded. *See Martinez* v. *Triumph Constr. Corp.*, No. 21 Civ. 4137 (JPO), 2022 WL 861847, at *4 (S.D.N.Y. Mar. 22, 2022) ("Because the Court concludes that [plaintiff's] FLSA overtime claim survives, his NYLL overtime claim necessarily survives." (citing *Nam* v. *Ichiba Inc.*, No. 19 Civ. 1222 (KAM), 2021 WL 878743, at *6 (E.D.N.Y. Mar. 9, 2021))).

[11]   Despite a measure of imprecision in discussing Plaintiff's state law claims and citations to inapposite NYLL sections, Defendants presumably are moving to dismiss Plaintiff's spread-of-hours pay claim (Count V, brought pursuant to N.Y. Comp. Codes R. & Regs. tit. 12, § 142-2.4). Defendants do not appear to move to dismiss Plaintiff's minimum

engage with Plaintiff's NYLL claims, arguing that "the claims should be immediately dismissed and no further comment is necessary." (Def. Br. 9).  In essence, Defendants respond to what they contend are "rote recitals of statutory requirements" with rote recitals of Rule 12(b)(6) law.

The Court disagrees with Defendants' arguments.  With particular respect to spread-of-hours pay, Plaintiff adequately states a claim by alleging that from time to time during her employment with Defendants, she worked in excess of ten hours per day, and that she did not receive spread-of-hours pay. (FAC ¶¶ 37, 39 (alleging that certain days Plaintiff worked from 10:30 a.m. to 8:40 p.m. without a break — *i.e.*, ten hours and ten minutes), 49 (alleging that Defendants never paid the spread-of-hours premium)).  *See Reyes* v. *Altamarea Grp., LLC*, No. 10 Civ. 6451 (RMB), 2011 WL 280799, at *3 (S.D.N.Y. Jan. 18, 2011) ("Plaintiffs' allegations that [d]efendants failed to pay [] spread-of-hours pay at the minimum wage rate when [plaintiffs] worked days of more than ten hours are adequate to state a claim … because [e]ven without [indicating the applicable rate of pay and the amount of unpaid overtime wages,] … the earnings one claims to be owed are readily determinable." (internal quotation marks and citations omitted)); *Sun*, 2021 WL 9507723, at *8 (finding plaintiff adequately pleaded spread-of-hours claims where plaintiff "alleges that throughout her employment, despite working a spread of time greater than ten

---

wage claims brought under the FLSA or NYLL § 652 (Counts I and II).  Even if Defendants were moving to dismiss those claims, the Court would find that Plaintiff had adequately pleaded minimum wage violations.  *See supra* n.8.

hours for five days per week, she was never paid for an extra hour at the applicable New York minimum wage rate").

Likewise, Plaintiff adequately pleads that she did not receive the requisite annual wage notice or accurate wage statements.  (FAC ¶¶ 50 ("Defendants did not provide [Plaintiff] a written wage notice, in Chinese ... when she was hired including but not limited to information about her rate of pay and basis thereof, allowances, including tip and meals credits, claimed by Defendants, and the regular pay day designed by Defendants."), 51 ("Defendants did not provide Plaintiff Guan with a correct wage statement with every wage payment.")).  *See Heras* v. *Metro. Learning Inst., Inc.*, No. 19 Civ. 2694 (DLI) (RLM), 2021 WL 66288, at *5 (E.D.N.Y. Jan. 7, 2021) (finding that plaintiff adequately pleaded claim under NYLL for failure to provide annual wage notice where plaintiff alleged that she "never [was] given a notice in her native language containing information regarding her regular and overtime rates of pay," and further that plaintiff adequately pleaded NYLL wage statement claim where plaintiff pleaded that wage statements provided to her were inaccurate (internal quotation marks and citations omitted)); *Sun*, 2021 WL 9507723, at *9 (same, where plaintiff pleaded that she never received wage notice or wage statements).

Finally, Plaintiff has adequately pleaded violations of NYLL Section 191, which section relates to frequency of payments.  In the FAC, Plaintiff avers that she is a "manual worker" within the meaning of the statute because she spent more than twenty-five percent of her working hours performing physical labor,

and that "Defendants willfully failed to pay [her] weekly or not later than seven calendar days after the end of the week in which the wages were earned." (FAC ¶¶ 95-96; *see also id.* ¶ 41 ("Throughout Plaintiff's employment with Defendants, Defendants paid Plaintiff bi-weekly in cash.")). These allegations are sufficient to plead a violation of Section 191. *See, e.g., Caul* v. *Petco Animal Supplies, Inc.*, No. 20 Civ. 3534 (RPK) (SJB), 2021 WL 6805889, at *2 (E.D.N.Y. Dec. 22, 2021) (finding, in context of standing, that plaintiff pleaded a claim under Section 191 because she pleaded that "defendants paid her on a bi-weekly basis, instead of within seven calendar days after the end of the week in which ... wages were earned, as she alleges was required by law" (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, Plaintiff's cross-motion to amend is GRANTED and Defendants' motion to dismiss is DENIED. Plaintiff is directed to file the SAC on or before **March 13, 2023**. Defendants are directed to file an answer to the SAC on or before **April 3, 2023**, and the parties are directed to file a joint letter and case management plan on or before **April 3, 2023**. If the parties wish to be referred to the Court's Mediation Program at this time, they should advise the Court concurrently with the filing of their joint letter and case management plan.

The Clerk of Court is directed to terminate the pending motions at docket entries 25 and 27.

SO ORDERED.

Dated:      February 27, 2023
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

36